UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JOAN BECKETT, and
MICHAEL BECKETT,

    Plaintiffs

v.                                        CIVIL ACTION NO. 2:05-0022

JOHN DOE and
PACIFIC EMPLOYERS INSURANCE COMPANY,

    Defendants

<u>MEMORANDUM OPINION AND ORDER</u>

      Pending are (1) a motion for summary judgment filed by
defendant Pacific Employers Insurance Company; and (2)
plaintiffs' motion for leave to file its response beyond the
deadline contained in the Local Rules.  The motions were filed
respectively on September 30, 2005, and October 25, 2005.  The
court ORDERS that the motion for leave to file beyond the
deadline be, and it hereby is, granted.

I.

      On September 4, 2002, plaintiff Joan Beckett (Beckett)
was operating a 1997 Suzuki Sidekick ("the vehicle") for her
employer, Pioneer Medical Services ("Pioneer").  (Pl.'s Resp. at
1.)  Pioneer leased the vehicle from GE Capital Fleet.  (Dep. of

John Mullins at 9.)  Beckett was traveling on Route 39 in
Nicholas County on her way to visit a client.  (Dep. of Joan
Beckett at 43.)  She noticed a vehicle pull up close behind her,
describing it as a light gray Dodge Ram pickup.  (<u>Id.</u>)  The
pickup attempted to pass her on several occasions.  (<u>Id.</u> at 44.)
When the pickup finally began to proceed around Beckett's
vehicle, she felt a bump on her rear fender and found herself
sliding "into a phone pole . . . ."  (<u>Id.</u> at 45.)

Beckett concedes some difficulty in recalling events at
the time of the accident:

> Yes.  It was like a -- I didn't remember everything at
> first.  It was like things just started coming back to
> me.  I remember him getting behind me.  I can remember
> seeing him drive by me as I'm sliding into the pole.  I
> could feel a bump.  And then he just sped off; he just
> flew.  He just left.

(<u>Id.</u> at 46-47.)

Beckett could not recall if she was knocked
unconscious.  (<u>Id.</u> at 50.)  A passerby, however, helped her from
her vehicle, which had caught fire, and he began applying
pressure to a head injury she sustained.  (<u>Id.</u> at 51.)  After an
ambulance arrived, Beckett was put in a cervical collar and
placed on a back board.  (<u>Id.</u> at 53.)  She repeatedly asked those
attending her at the accident scene about the location of the

pickup and later phoned the sheriff's office twice with the same inquiry.[1]  (Id. and id. at 69.)

Stephen King, a fellow employee, spoke with Beckett at the accident scene and noted "she said something about a green Dodge truck . . . tailgating her coming across the flat." (Dep. of Stephen King at 16.)  King also noted that when he later inspected her vehicle after it was transported to Pioneer's premises, he observed "a scrape mark on the bumper . . . on the driver's side rear . . . and it was approximately a three to four inch[] long scrape." (Id. at 20.)  King showed the scrape to his boss, John Mullins.  (Id. at 20-21, 32.)  Mullins recalls the scrape, noting some of the paint found in it was a gray or green color.  (Dep. of John Mullins at 23-24.)

The responding law enforcement officer, Deputy D.W. Plummer of the Nicholas County Sheriff's Office, attempted to question Beckett at the scene and later at the emergency room. (Beckett dep. at 54.)  The attending physician at the hospital, however, advised that Beckett was not sufficiently stable to

---

[1]Beckett also recounted that she later told other co-employees about the pickup truck.  (Id. at 60.)

3

respond to the questions.[2]  (Id.)  Indeed, although Beckett was
ultimately released from the hospital the same day, (id. at 58),
she became very ill, experiencing vomiting and seizure activity,
that resulted in her hospitalization anew the next day.  (Id.)

Although he was not permitted to question her at the
hospital, Deputy Plummer testified to a brief conversation he had
with Beckett at the accident scene.  When Deputy Plummer asked
her what caused the accident, he recounted that "I believe she
told me that she didn't know."  (Dep. of Deputy D.W. Plummer at
10.)  Deputy Plummer also noted, however, that Beckett was
disoriented and it was "hard for her to articulate what had
happened."  (Id. at 27.)  Deputy Plummer subsequently formed the
conclusion that the mishap was properly classified as a single-
vehicle accident.  (Id. at 11.)  He notes, however, that he never
asked Beckett if another vehicle was involved.[3]  (Id. at 12.)

---

[2]Beckett sustained serious knee injuries that have resulted
in two surgical procedures.  (Beckett dep. at 13-14.)  She also
suffered, as noted, a head laceration, two bulging cervical
disks, and a "huge" indentation in her thigh along with other
injuries.  (Id. at 22.)

[3]Further adding to the uncertainty about the accident are
two other documents.  The first is a worker's compensation claim
form filed October 2002, upon which Beckett noted that her
injuries resulted from a "[s]ingle MVA--[o]n my way to see a
patient."  (Ex. A, Def.'s Reply.)  The second document is an
emergency room report drafted on the day of the accident.  It
notes a "1 car MVA" that occurred when Beckett "apparently fell

4

The accident report Deputy Plummer prepared does not indicate any damage to the vehicle's rear fender area.  (<u>Id.</u> at 13.)  He admits, however, that he took less than a minute to inspect the vehicle.  (<u>Id.</u> at 32.)  He further observed that he did not make a "close inspection . . . ."  (<u>Id.</u>)  Beckett contends Deputy Plummer mistakenly recorded several details in his accident report.  (Beckett dep. at 57.)  For example, Deputy Plummer noted Beckett was still in the vehicle when he arrived on the scene.  (Plummer dep. at 10.)  As noted above, Beckett testified to the contrary.  Deputy Plummer himself acknowledged certain errors regarding both the location of his cruiser when he arrived on the scene and whether the vehicle actually caught fire.  (<u>Id.</u> at 16, 30.)

Eight (8) days after the accident, Beckett accompanied her daughter to photograph the vehicle at Pioneer's premises.  (<u>Id.</u> at 63-66.)  The daughter did not photograph the rear bumper, limiting her efforts to the most heavily damaged areas of the vehicle.  (<u>Id.</u> 67.)  Approximately ten (10) days later, GE Capital Fleet had the vehicle removed from Pioneer's premises.

---

asleep" while driving.  (Ex. B, Def.'s Reply.)  These documents were first discussed in defendant's reply brief.  Accordingly, plaintiffs have not yet had the opportunity to explain their contents.

Beckett later learned of this event and began making inquiries. (Id. at 70.)  When Beckett questioned a GE Capital agent about the matter, she learned that the vehicle was sent to Minnesota. (Id. at 70-71.)  When she contacted the Minnesota location, she was told "Well, it's already been -- smashed. . . . We were just given orders to have it demolished."  (Id. at 72.)

Mullins testified that the vehicle was the first one in use by Pioneer from the GE Capital Fleet that received damage resulting in its total loss.  (Mulins dep. at 12.)  He observed Pioneer's procedure upon notification of a vehicular accident required the affected employee to contact GE Capital Fleet using materials found in the glove compartment.  (Id. at 13.)  He admitted, however, that some of the GE Capital Fleet procedures have changed "a time or two."  (Id. at 15.)  He also noted that he was unaware of whether Beckett was instructed about the procedure for reporting an accident.  (Id. at 40-41.)  Mullins also recounted that he told Beckett the vehicle would be covered by insurance.  (Id. at 27.)  Although he did not provide Beckett any further information about coverage, he stated that she should have been dealing with her manager at Pioneer about the matter. (Id. at 28.)

6

On August 1, 2003, Beckett's counsel requested Pioneer to provide him "the information to contact your automobile insurance carrier, Pacific Employers . . . ."  (Ex. E, Pl.'s Resp.)  The defendant, Pacific Employers, however, was not notified of the accident until December 21, 2004.  (Aff. of Nancy Yang ¶ 8.)

Defendant asserts it is entitled to judgment as a matter of law for two reasons.  First, it asserts its defense has been unduly prejudiced by the unreasonable delay in providing it notice of the accident.  It points primarily to the destruction of the vehicle.  Second, it asserts there is insufficient evidence of physical contact between the pickup and the vehicle.

II.

A.   Governing Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

7

Fed. R. Civ. P. 56(c).  Material facts are those necessary to
establish the elements of a party's cause of action.  <u>Anderson v.</u>
<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

        A genuine issue of material fact exists if, in viewing
the record and all reasonable inferences drawn therefrom in a
light most favorable to the non-moving party, a reasonable fact-
finder could return a verdict for the non-movant.  <u>Id.</u>  The moving
party has the burden of showing -- "that is, pointing out to the
district court -- that there is an absence of evidence to support
the nonmoving party's case."  <u>Celotex Corp. v. Catrett</u>, 477 U.S.
317, 325 (1986).  If the movant satisfies this burden, then the
non-movant must set forth specific facts as would be admissible
in evidence that demonstrate the existence of a genuine issue of
fact for trial.  Fed. R. Civ. P. 56(c); <u>Id.</u> at 322-23.  A party
is entitled to summary judgment if the record as a whole could
not lead a rational trier of fact to find in favor of the non-
moving party.  <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir.
1991).

        Conversely, summary judgment is not appropriate if the
evidence is sufficient for a reasonable fact-finder to return a
verdict in favor of the non-moving party.  <u>Anderson</u>, 477 U.S. at
248.  Even if there is no dispute as to the evidentiary facts,

summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

In reviewing the evidence, a court must neither resolve disputed facts or weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

B.   Discussion

Defendant's motion places in issue the question of whether plaintiffs complied with West Virginia Code section 33-6-31(e).  The statute provides pertinently as follows:

> (e) If the . . . operator of any motor vehicle which causes bodily injury or property damage to the insured be unknown, the insured, or someone in his or her

behalf, in order for the insured to recover under the
uninsured motorist endorsement or provision, shall:

> (i) Within twenty-four hours . . . the
> insured . . . shall report the accident to a
> police . . . officer, unless the accident
> shall already have been investigated by a
> police officer;

> (ii) Notify the insurance company, within
> sixty days after such accident, that the
> insured or his or her legal representative
> has a cause or causes of action arising out
> of such accident for damages against a person
> or persons whose identity is unknown and
> setting forth the facts in support thereof;
> and, upon written request of the insurance
> company communicated to the insured not later
> than five days after receipt of such
> statement, shall make available for
> inspection the motor vehicle which the
> insured was occupying at the time of the
> accident; and

> (iii) Upon trial establish that the motor
> vehicle, which caused the bodily injury or
> property damage, whose operator is unknown,
> was a "hit and run" motor vehicle, meaning a
> motor vehicle which causes damage to the
> property of the insured . . . or which causes
> bodily injury to the insured arising out of
> physical contact of such motor vehicle with
> the insured or with a motor vehicle which the
> insured was occupying at the time of the
> accident. . . .

W. Va. Code § 33-6-31(e).

The West Virginia Supreme Court of Appeals has observed
that "[t]he notification and filing provisions of section
33-6-31(e) protect the insurance company's due process rights in

10

the determination of legal liability." <u>Perkins v. Doe</u>, 177 W.
Va. 84, 86, 350 S.E.2d 711, 714 (1986).  In <u>State Farm Mutual</u>
<u>Automobile Insurance Co. v. Norman</u>, 191 W. Va. 498, 446 S.E.2d
720 (1994), however, the supreme court of appeals observed the
statute, in its entirety, had an additional salutary purpose:

> "[t]he primary, if not sole purpose of mandatory
> uninsured motorist coverage is to protect innocent
> victims from the hardships caused by negligent,
> financially irresponsible drivers."

<u>Id.</u> at 506, 446 S.E.2d at 728) (quoted authority omitted).


### 1.  Notice


  The three principal West Virginia cases addressing an
insured's failure to give timely notice of an accident are <u>State</u>
<u>Auto Mutual Ins. Co. v. Youler</u>, 183 W.Va. 556, 396 S.E.2d 737
(1990), <u>Dairyland Ins. Co. v. Voshel</u>, 189 W. Va. 121, 428 S.E.2d
542 (1993), and <u>Colonial Ins. Co. v. Barrett</u>, 208 W. Va. 706, 542
S.E.2d 869 (2000).  In discussing the general parameters of the
notice requirement, the supreme court of appeals in
<u>Youler</u> observed that the "purpose of a notice provision . . . is
to give the insurer an opportunity to make a timely and adequate
investigation of all the circumstances surrounding the event
which resulted in a claim being made against the insurer."  <u>Id.</u>

at 561, 396 S.E.2d at 742.  Syllabus point 2 then provided

guidance on how to balance the insurer's need to fully and fairly

investigate a claim with the insured's desire to receive

compensation for his injuries:

> In an uninsured or underinsured motorist case,
> prejudice to the investigative interests of the insurer
> is a factor to be considered, along with the reasons
> for delay and the length of delay, in determining the
> overall reasonableness in giving notice of an accident.
> In the typical case, the insured must put on evidence
> showing the reason for the delay in giving notice. Once
> this prerequisite is satisfied, the insurer must then
> demonstrate that it was prejudiced by the insured's
> failure to give notice sooner. . . .

Syl. pt. 2, Youler, 183 W.Va. at 556, 396 S.E.2d at 737 (emphasis

supplied).

The notice issue reached the West Virginia court again

just three years later in Yoshel.  In syllabus point 2, the

supreme court of appeals expanded further upon the necessary

analysis:

> In cases which involve liability claims against an
> insurer, several factors must be considered before the
> Court can determine if the delay in notifying the
> insurance company will bar the claim against the
> insurer. The length of the delay in notifying the
> insurer must be considered along with the
> reasonableness of the delay. If the delay appears
> reasonable in light of the insured's explanation, the
> burden shifts to the insurance company to show that the
> delay in notification prejudiced their investigation
> and defense of the claim. If the insurer can produce
> evidence of prejudice, then the insured will be held to
> the letter of the policy and the insured barred from

> making a claim against the insurance company. If,
> however, the insurer cannot point to any prejudice
> caused by the delay in notification, then the claim is
> not barred by the insured's failure to notify.

Syl. pt. 2, <u>Voshel</u>, 189 W. Va. at 121, 428 S.E.2d at 542

(emphasis supplied).

Finally, in <u>Barrett</u>, the West Virginia court noted that
it had "repeatedly held that in order for the insurance company
to avoid responsibility under an insurance policy, the insurance
company must demonstrate that it was prejudiced by the
policyholder's delayed notice."  <u>Barrett</u>, 208 W. Va. at 710, 542
S.E.2d at 873.

One common thread running through all three cases is
the importance of the fact finder in conducting the multi-faceted
inquiry.  <u>See</u> <u>Youler</u>, 183 W. Va. at 561, 396 S.E.2d at 742
("Generally, whether notice has been given to an automobile
insurer within a reasonable period of time is an issue to be
resolved by the fact finder."); <u>Voshel</u>, 189 W. Va. at 124, 428
S.E.2d at 545 ("The issue of whether Mrs. Brookover notified the
insurance company about the accident within a reasonable time
period, given the facts of this particular case, is a question
for the finder of fact."); <u>Barrett</u>, 208 W. Va. at 712, 542 S.E.2d
at 875 ("The question of whether an insurance company was

13

notified within a reasonable time period is, generally, a question for the finder of fact.").

Inasmuch as this action involves underinsured motorist coverage, it is most like <u>Youler</u>.  The court, accordingly, employs the notice paradigm discussed in that case.  It appears undisputed that nearly twenty-eight (28) months elapsed between the accident and the time defendant received notice.  Plaintiffs summarize the reason for the delay:

> Immediately following the accident, Mrs. Beckett's supervisor, Robert Holiday, was informed of the accident.  . . . Not only was Mr. Holiday . . . aware of the accident and its involvement of another vehicle, Pioneer Medical, by and through John Mullins . . ., was aware of the accident and the fact that Mrs. Beckett clearly indicated another vehicle had been involved. Mr. Mullins provided on several instances in his deposition his acknowledgment of the damage to the rear of Mrs. Beckett's vehicle along with the presence of different paint colors on the damaged area representing the color of gray or green.  More specifically, Mr. Mullins when asked with whom Mrs. Beckett would deal with regarding insurance for this accident, he responded "[s]he should have been dealing through Pioneer Medical Services."  Pursuant to the affidavit attached hereto, Ms. Beckett by and through her counsel, attempted to contact Pioneer Medical Services requesting information regarding Pacific Employers. Mr. Mullins further states in his deposition that Ms. Beckett should have contacted and dealt specifically with Robert Holiday, the location manager.  That is exactly what she did.  Mrs. Beckett testified that she informed her regional manager and department head that she had been involved in a motor vehicle accident involving another vehicle.  This information was made available to her supervisor within days of the accident and subsequently followed up by the letter from her counsel.  Plaintiff clearly provided notice of her

14

   claim to every individual or agency that could
   reasonably be expected of her.

(Pl.'s Memo. in Supp. at 8-9.)  The court also notes confusion on

Mullins' part as to the proper procedure for reporting accidents

involving GE Capital Fleet vehicles and his uncertainty about

whether Beckett was ever apprized of the appropriate procedure.

   Regarding prejudice, defendant now lacks what would be

a significant piece of evidence in the case, namely the vehicle.

At the same time, two considerations are noteworthy.  First, it

appears the vehicle was removed from Pioneer's premises and

demolished in very close temporal proximity to the accident.

Assuming, then, that Beckett was charged with the responsibility

for reporting the accident to defendant, and further that she

would have done so toward the end of the (60) day, statutory

notice period, it remains possible that the vehicle would yet

have been destroyed before that time in any event.  In other

words, the vehicle might well have been demolished even if she

had complied with the sixty (60) day notice requirement.

   Second, defendant, although now lacking an important

artifact in the case, is not left defenseless as a result.  Among

other significant pieces of evidence, it has (1) Deputy Plummer's

report, and (2) the sworn testimony of plaintiff and several

other key witnesses who spoke with her near the time of the

accident.

15

In view of the rather subtle and disputed nature of the
notice and prejudice issues, summary judgment is inappropriate.
This is especially so when one considers the settled view of the
supreme court of appeals' concerning the preeminent role of the
fact finder in this setting.[4]  The court, accordingly, ORDERS
that this portion of defendant's motion for summary judgment be,
and it hereby is, denied.


## 2.  Physical Contact


West Virginia Code section 33-6-31(e)(iii) requires
physical contact between a phantom automobile and the insured
vehicle.  W. Va. Code § 33-6-31(e)(iii); see also syl. pt. 2,
State Farm Mut. Auto. Ins. Co. v. Norman, 191 W. Va. 498, 499,
446 S.E.2d 720, 721 (1994); Lee v. Saliga, 179 W. Va. 762, 764,
373 S.E.2d 345, 347 (1988); Perkins v. Doe, 177 W. Va. 84, 86,
n.2, 350 S.E.2d 711, 713 n.2 (1986); Lusk v. Doe, 175 W. Va. 775,
778, 338 S.E.2d 375, 378 (1985), overruled on other grounds,
Hamric v. Doe, 201 W. Va. 615, 499 S.E.2d 619 (1997) ("In order
for the insured to recover from the insurer, upon trial it must .

---

[4]Defendant also raises a spoliation claim related to its
notice argument.  Defendant seeks the ultimate sanction of
dismissal as a result of the vehicle's destruction.  In view of
the sharply contested factual record, such relief is unwarranted
at this juncture.

16

. . be shown that the injuries were incurred after physical contact with the hit and run vehicle.").

Defendant contends plaintiffs have "provided absolutely no evidence, other than Joan Beckett's own self-serving testimony, as proof that another vehicle was involved in the subject accident."  (Def.'s Reply at 2.)  Plaintiffs have, however, offered (1) Beckett's firsthand account of the accident and the "bump" she felt when the pickup passed her, (2) her statements to others concerning the pickup making contact with her vehicle, and (3) the testimony of at least two other individuals who witnessed the scrape on the vehicle's bumper, one of whom noted the paint color of the scrape tied to the color of the pickup as described by Beckett.  This showing is sufficient to raise a genuine issue of material fact concerning satisfaction of the physical-contact requirement.  Summary judgment is inappropriate.


III.


Based upon the foregoing, the court ORDERS that defendant's motion for summary judgment be, and it hereby is, denied.

17

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED:  November 15, 2005

John T. Copenhaver, Jr.
United States District Judge

18